IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FREDERICK LIVINGSTON,           )
         Plaintiff,           )
                                )
     v.                        )    Civil Action No. 08-812
                                )
THE BOROUGH OF EDGEWOOD, a      )    Magistrate Judge Lisa Pupo Lenihan
Municipal Corporation; DENNIS   )
HOCKENBERRY, TIMOTHY QUINN,     )
MICHAEL CROW, KURT FERGUSON,    )
and PAUL WOOD, individuals      )
         Defendants.          )

**MEMORANDUM OPINION AND ORDER ON PARTIAL MOTION TO DISMISS**

**I. CONCLUSION**

    For the reasons set forth below, the Court concludes that, at present, neither (a) Plaintiff's federal claims of violation of his First, Fifth, Sixth, or Fourteenth Amendment due process rights, nor (b) Plaintiff's state law claims of intentional infliction of emotional distress, set forth allegations sufficient to withstand Defendants' Partial Motion to Dismiss.[1]  Given the nature of

---

1. Defendants have not moved to dismiss Plaintiff's Fourteenth Amendment equal protection, § 1985(2), or state law defamation and civil conspiracy claims.  See Brief in Support of Motion to Dismiss at 4.

Plaintiff's Complaint, however, he will be provided twenty (20) days within which to amend his Complaint to set forth clearly-identified causes of action that identify both Plaintiff's legal theory (*e.g.*, specifying that a First Amendment claim asserts violation of Plaintiff's rights to petition as opposed to free speech) and facts suggestive of the proscribed conduct alleged. In accordance with <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007), Plaintiff's Amended Complaint must coherently provide both "fair notice" of Plaintiff's specific causes of action and the factual grounds on which each cause of action rests.[2] In the absence of amendment within the twenty (20) day period, Defendants' Partial Motion to Dismiss will be granted. In the event of amendment, said Motion may be refiled, at Defendants' discretion, within twenty (20) days from the date of the Amended Complaint.

II. **FACTUAL AND PROCEDURAL BACKGROUND**

This is an action brought by Plaintiff Frederick Livingston ("Livingston") against Defendants for alleged federal civil rights and related state law violations during his employment as an Edgewood Borough police officer. More specifically, the action turns on conduct of

---

2. As Defendants duly note, the present Complaint does not identify the facts upon which each federal claim is based. <u>See</u> Brief in Support of Motion to Dismiss at 2. Indeed, it does not always adequately identify the claim. <u>Cf.</u> Complaint (citing to §§ 1983, 1985, and First, Fifth, Sixth, and Fourteenth Amendments in heading of each Defendant's "Count"); Brief in Support of Motion to Dismiss at 5-8 (providing legal analysis as to First Amendment claim presumed to rest on free speech violation); Brief in Opposition to Motion to Dismiss (identifying, for first time, First Amendment claim as resting on violation of right to petition).

Edgewood Borough ("the Borough") and its employees (the "Individual Defendants")[3] relating and subsequent to Livingston's arrest and trial for criminal conduct of which he was ultimately acquitted.

Plaintiff, an African-American, has been and continues to be employed as a police officer in the Borough. In early August, 2005, the Allegheny County police (not the Borough police) initiated criminal charges against and arrested Plaintiff for rape, statutory sexual assault, incest, endangering the welfare of children, aggravated indecent assault, indecent assault and corruption of minors. The charges arose from allegations of abuse made to Allegheny County by Plaintiff's minor daughter. The Complaint makes no allegation that Defendants were in any way involved in the filing of charges or decision to arrest Plaintiff.[4] The Borough Manager and its Mayor attended the August 22, 2005 preliminary hearing on the criminal charges before the District Magistrate.

Plaintiff was suspended from his police officer position, *with* pay, in early September 2005.[5] Five months later, in mid-February, 2006, the Borough held a Loudermill hearing and extended Plaintiff's suspension without pay.[6] Plaintiff avers that his hearing was a "sham"

---

3. Defendants Hockenberry, Quinn and Crow are Borough police officers. Defendant Wood was the Borough's Chief of Police during the relevant time period. Defendant Ferguson is the Borough Manager. See Complaint at 2-3.

4. Compare Brief in Opposition at 8 ("The bases for Plaintiff's Complaint are the filing of false criminal charges against him . . . .").

5. Cf. 53 P.S. § 752.1 (requiring suspension of a law enforcement officer charged with a felony or serious misdemeanor pending final disposition of the charge or ARD).

6. Under Cleveland Board of Educ. v. Loudermill, 470 U.S. 532 (1985), a public employee is entitled to a *limited* pre-termination hearing, as an initial check against mistaken decisions, that assesses the reasonableness of the charges against the employee. Cf. Gilbert v. Homar, 520 U.S.

(continued...)

because the Defendants refused his offers to undergo a lie detector test and ignored and/or failed to investigate the evidence.[7] He also asserts that, during this time, the Individual Defendants were (a) impugning his reputation and (b) misrepresenting the nature/quantity of evidence against him to the community. He attributes this conduct to racial and personal animus. The Court notes, however, that the Complaint makes no allegation of racial discrimination or animus on the part of Defendants prior to Plaintiff's arrest. Compare Brief in Opposition at 19 ("Plaintiff was charged, falsely, with engaging in criminal conduct relating to his minor daughter. The genesis of these charges leading to the sham Loudermill hearing was Defendants' racial hostility towards him."). Cf. *supra* (noting that genesis of charges was Plaintiff's daughter's allegations against him).

Plaintiff's criminal trial occurred in September, 2006. He broadly alleges that the Individual Defendants conspired, perjured themselves, and improperly and maliciously interfered with that criminal proceeding.[8] In support thereof, the factual specifics of the present

---

6. (...continued)
924 (1997) (holding that employee was not entitled, under due process clause, to hearing prior to suspension without pay where, as here, suspension was based on felony arrest).

7. . Loudermill requires only that the employee be given notice of the charges, an explanation of the evidence, and opportunity to present his side of the story. See id.; McDaniels v. Flick, 59 F.3d 446, 454 (3d Cir. 1995).

8. At times, the Complaint also appears to assert that Defendants were responsible for Plaintiff's criminal proceedings. See, *e.g.*, Complaint at ¶ 20 (asserting that Defendants conspired and engaged in obstruction of justice, witness tampering, and malicious and vengeful acts "such that Plaintiff was maliciously prosecuted for crimes he did not commit"). No factual allegations of the Complaint presently support this inference.

In clarifying the scope and basis of each constitutional claim alleged, any amended complaint should set forth the scope and basis of liability alleged against the Borough, as well as the Individual Defendants, as the current Complaint is, in many respects, insufficient as a matter of
(continued...)

Complaint assert that one or more of the Defendants testified that in their opinion Plaintiff was not entirely truthful,[9] identified to the prosecuting authorities other individuals know to them to have knowledge of Plaintiff, pressured unidentified witnesses to perjure themselves, and tampered with Plaintiff's witness, the Borough Secretary (Donna or Leslie Lewis), by threatening her with termination.[10] Plaintiff was acquitted by the jury.

Although Plaintiff was reinstated to his position as a Borough police officer following his acquittal, he alleges that the Individual Defendants have subsequently engaged in discriminatory and retaliatory conduct, including removing Plaintiff from prior job duties; making untrue/unfavorable and racist comments about him; creating and circulating a racial caricature; improperly intercepting/withholding personal mail; general harassment and refusing to assist

---

8. (...continued)
law. Compare Complaint at ¶ 25 ("These failures of Defendant, Edgewood, were due to a custom or policy of indifference to the necessity for adequate supervision and training in order to convict Plaintiff because of their racial animus toward Plaintiff."); id. at ¶ 30 ("The actions of these police officers, jointly and severally, acted with wanton and willful actions . . . .") with Twombly, supra; Brown v. Commonwealth of Pa., Dept. of Health Emergency Medical Servs., 318 F.3d 473, 482083 (3d Cir. 2003) (explaining that there must be a "direct causal link" between the policy and a specific constitutional violation for municipal liability under Monell).

9. See, e.g., Complaint at ¶ 111 (alleging that Defendant Ferguson acted in concert with a conspiracy of perjury "by testifying under oath Plaintiff's reputation for honesty in Edgewood Borough Public Safety Department is not good and Plaintiff's reputation for honesty in Edgewood Borough is mixed").

10. Compare Complaint at ¶ 61 with id. at ¶ 81. The Complaint also alleges, somewhat unclearly, that the Defendants accused Ms. Lewis of witness tampering (the particulars are unspecified) to the District Attorney and the Allegheny County Police Chief, and that Ms. Lewis "did not show up for trial because she was ordered by her Lieutenant from County to stay away." Complaint at ¶ 86. But see id. at ¶ 118 (asserting that Defendant Ferguson ordered Ms. Lewis not to attend trial).

Plaintiff in police officer work;[11] rescheduling his work hours in a manner that eliminates his ability to supplement his salary by working additional hours for other employers; denying vacation/time off requests; discarding his Daily Log Sheets; failing to provide a timely annual review; denying an opportunity to take the Sergeant's exam;[12] denying Plaintiff's request for suspension backpay, requiring him to "follow a sham grievance procedure", and improperly interfering when Plaintiff sought assistance from the Fraternal Order of Police ("the FOP") to grieve that denial.[13]

### III. STANDARD ON MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted if the complaint fails to set forth sufficient facts to state a claim to relief that is plausible on its face. See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). See also Phillips v. County of Allegheny, 515 F.3d 233 (3d Cir. 2008) (explaining, in citing Twombly, that "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice); id. (noting that the complaint "must allege facts suggestive of [the proscribed] conduct"); id. (requiring plaintiff to allege "enough facts to raise a reasonable expectation that discovery will

---

11. See Complaint at ¶ 69 (alleging that Defendant Hockenberry stood by rather than assist in evacuating 50 preschool children during a fire call at the church housing their daycare center because he wanted to embarrass/endanger Plaintiff).

12. See Complaint at ¶ 101 (alleging that Defendant Quinn falsely argued that Plaintiff was not yet eligible to take the sergeant's exam owing to his break-in-service from September 2005 through August 2006). Plaintiff's assertion, although somewhat unclear, appears to be that he should have been given full credit for this period, and deemed qualified to take the exam, because he was ultimately acquitted of the criminal charges.

13. See Complaint ¶ 65 (alleging that Defendant Hockenberry "lied about Plaintiff" to the FOP by "stating Plaintiff was behind in his dues, which he was").

reveal evidence of the necessary element[s] of his claim"); Plaintiff's Brief in Opposition at 4 (noting that Twombly "reflormulat[ed] Conley to require a "showing of 'grounds'"). In so ruling, the court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

## IV. ANALYSIS

### A. First Amendment

The present Complaint avers a general violation of Plaintiff's First Amendment rights, without specification. In their Brief in Support, Defendants correctly observe that the factual allegation apparently related to a free speech claim - Plaintiff's assertion that he was retaliated against for complaining of his treatment - is insufficient as a matter of law, as said speech related exclusively to a private matter/grievance and not to a matter of public concern. See Brief in Support at 5-8. See also, *e.g.*, Swineford v. Snyder County, 15 F.3d 1258, 1270 (3d Cir. 1994); Curinga v. City of Clairton, 357 F.3d 305, 309 (3d Cir. 2004).

Plaintiff responds, however, in his Brief in Opposition, that he intends his First Amendment claim to assert a violation of his right to petition. More specifically, Plaintiff asserts violations of the right to petition premised on a sham Loudermill hearing, "resistance" to his attempt to grieve backpay through the FOP, and refusal to administer the sergeant's examination to Plaintiff when requested. See Brief in Opposition at 20-21. None of these allegations support a First Amendment claim for violation of Plaintiff's right to "petition the government for a redress of grievances", nor does Plaintiff provide any authority suggesting otherwise. Although a petition in the form of a formal union grievance pursuant to a collective bargaining agreement is

7

a protected activity within the ambit of the First Amendment's petition clause, see San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994), Plaintiff has not alleged the filing of and retaliation in response to a formal union grievance. Rather, Plaintiff alleges only that in response to his soliciting a formal grievance procedure through his union, the Defendants truthfully noted to the FOP that Plaintiff was behind in his union dues. Cf. Cooper v. Cape May City Bd. of Social Servs., 175 F.Supp.2d 732 (D.N.J. Nov. 27, 2001) (holding that government employee's complaints to state department and his union, consisting of informal calls, letters, and meetings, did not implicate right to petition, which extends only to formal grievance). Even if Plaintiff alleged protected conduct, such as a formal grievance, a proper First Amendment retaliation claim would also require that (1) the government retaliated in a manner sufficient to deter a person of ordinary firmness from further exercising his right, and (2) the protected act caused the retaliation alleged. See, *e.g.*, Thomas v. Independence Township, 463 F.3d 285, 296 (3d Cir. 2006).

### B. Fifth Amendment

As noted in Defendants' Brief in Support, the Fifth Amendment requires a Grand Jury indictment (with limited exception); prohibits double jeopardy and compulsory criminal self-incrimination; requires due process protection of life, liberty and property; and requires just compensation for a public-use taking. See Brief in Support at 8, n. 1. The only provision possibly related to the present Complaint is, therefore, the right of due process. But a Fifth Amendment due process claim is applicable only to the federal government. See, *e.g.*, Kelly v. Borough of Saraville, 107 F.3d 1073 (3d Cir. 1997) (explaining that in action against municipality and its officer, due process claim is considered under the Fourteenth - and not the

8

Fifth - Amendment); Kline v. City of Sunbury, 2007 WL 3231959 (M.D. Pa. Oct. 27, 2007) (same); Nanc v. City of Newark, 2008 WL 508598 (D.N.J. Feb. 21, 2008) (noting that Fifth Amendment due process guarantees are limited to conduct of federal officials and do not apply to limit conduct of municipal actors).

### C. Sixth Amendment

Again as duly noted in Defendants' Brief in Support, the Sixth Amendment affords individual rights to a speedy trial, impartial jury, knowledge of the nature and cause of a criminal accusation, opportunity to be confronted with adverse witnesses and to compel favorable witnesses, and effective assistance of counsel. Here again, the Complaint does not specify particular factual allegations as grounding its Sixth Amendment cause of action.

To the extent, however, Plaintiff avers, in his Brief in Opposition, that these Defendants interfered with his Sixth Amendment right to compel witnesses - by discrediting and/or threatening a favorable witness[14] - the allegations of his Complaint are legally insufficient. As Defendants note, averments of improper interference with trial by, *e.g.*, witness tampering or other obstruction of justice, may support a charge of criminal violation, but do not support a Sixth Amendment claim in these circumstances. See Brief in Support at n. 2. Cf. Lambert v. Blackwell, 387 F.3d 210, 260 (3d Cir. 2004) (holding that *prosecutorial* threats that "substantially interfere" with potential witness' choice to testify may infringe criminal defendant's Sixth Amendment right to compulsory process); id. (habeas case assessing prosecutorial violations of Brady v. Maryland, 373 U.S. 83 (1963), and constitutional rights);

---

14. Cf. *supra* n. 10.

9

United States v. Morrison, 535 F.2d 223 (3d Cir. 1976) (discussing Sixth Amendment in context of prosecutorial misconduct).[15]

In addition, Defendants are immune from Plaintiff's claims that they perjured themselves (by testifying that Plaintiff was less than fully honest) in his criminal trial. See Brief in Support; Briscoe v. Lahue, 460 U.S. 325 (1983); Bansal v. Russ, 513 F.Supp.2d 264 (E.D. Pa. 2007) (holding that criminal witnesses have absolute immunity from civil liability for their testimony in court).[16]

### D. Fourteenth Amendment

**1. Procedural Due Process**

The specific nature of Plaintiff's Fourteenth Amendment claim is as yet unclear in his Complaint.

A legally sustainable claim for violation of procedural due process under the Fourteenth Amendment requires a showing that Defendants failed to provide Constitutional due process protections to Plaintiff's entitled property or liberty interest. See generally Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

Regarding Plaintiff's assertion of a procedural due process claim premised on his averments that his Loudermill hearing was a "sham", as reflected in his Brief in Opposition: that claim appears to be time barred. The Loudermill hearing occurred in February, 2006 and

---

15. Plaintiff's present Brief in Opposition provides, as to his Sixth Amendment claim, neither legal analysis nor citation to case law analogous to the circumstances of the case *sub judice*. Cf. Brief in Opposition at 22-25.

16. Cf. Brief in Opposition at 23 ("Moreover, even though Defendants may be immune from liability relative to the allegations of perjury, they are open to criminal prosecution . . . .").

Plaintiff was suspended without pay at that time. Plaintiff's Complaint was filed in June, 2008, well outside the applicable two year statute of limitations. See Brief in Support at 12-13 (providing case citation). Plaintiff's assertions that he is entitled to equitable tolling or application of the continuing violations doctrine in the circumstances of this case are without merit. See generally O'Connor v. City of Newark, 440 F.3d 125 (3d Cir. 2006) (citing Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002) (establishing distinction between individually-actionable, discrete acts subject to statute of limitations, *such as wrongful suspension*, and those within scope of continuing violations doctrine)).[17]

In addition, to the extent Plaintiff intends a procedural due process violation arising from Defendants' alleged defamations, he must also show a deprivation of some additional right or interest guaranteed by the Constitution. See Versage v. Township of Clinton, N.J., 984 F.2d 1359, 1371 (3d Cir. 1993) (holding that reputation *alone* is not an interest protected by the due process clause) (citing Paul v. Davis, 424 U.S. 693, 701 (1976)); Clark v. Township of Falls, 890 F.2d 611, 619 (3d Cir. 1989) (discussing this "formidable barrier"); Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (holding that "public employee who is defamed *in the course of being terminated or constructively discharged* satisfies the 'stigma-plus' test") (emphasis added); Municipal Revenue Servs., Inc. v. McBlain, 2007 WL 879004, *4 (E.D. Pa. Mar. 19, 2007) (noting that mere economic harm is insufficient and defamation must accompany

---

17. And the Supreme Court has indicated that no hearing is required prior to suspending a government employee without pay where, as here, that employee has been charged with a felony. See *supra* n. 6; Reply to Brief in Opposition at 5 (citing Gilbert v. Homar, 520 U.S. 924 (1997)). See also Lohman v. Borough, 2007 WL 4260943 (M.D. Pa. Nov. 29, 2007) (citing Gilbert and holding that temporary loss of employment and subsequent reinstatement of police officer did not require pre-depravation hearing).

extinguishment of right/status guaranteed by law or the Constitution).[18] Although a public employee defamed in connection with his termination or constructive discharge may establish a liberty interest depravation, Plaintiff resumed his position after acquittal. See Edwards v. California Univ. of Pa., 156 F.3d 488, 492 (3d Cir. 1988) (dismissing stigma-plus claim based on suspension without pay). Cf. Hill, 455 F.3d at 238 (citing cases in which the Third Circuit held that deprivation suffered along with stigma to reputation was insufficient where plaintiff did not lose job but "complained of some adverse employment action less dramatic").[19]

Finally, Plaintiff's Brief in Opposition asserts denials of due process premised on his "attempted" backpay grievance (and the FOP's non-assistance), his belated annual review, refusal to permit him to sit for the sergeant's exam at the time requested, and refusal to permit him to voice complaints against Defendant Hockenberry at a meeting called by Defendant Wood. See Brief in Opposition at 6-7. Plaintiff identifies in his legal brief no case law in support of these claims, nor is the Court aware of any that would support his apparent Constitutional interpretation.

### 2. Substantive Due Process

A substantive due process claim requires a showing that Plaintiff was deprived of a "particular quality" of property interest, one which is determined to be "fundamental" under the United States Constitution (as opposed to state law). See Nicholas v. Pennsylvania State Univ., 227 F.3d 133 (3d Cir. 2000); see generally Albright v. Oliver, 510 U.S. 266, 271-72 (U.S. 1994).

---

18. Compare Alexander v. Hargrove, 1995 WL 144636 (E.D. Pa. 1995) (distinguishing defamatory/stigmatizing statements made *in the course of termination*).

19. As Defendants note, the redress for violation in a stigma-plus case is generally a "name-clearing" hearing. The Circuit has not found entitlement to any further remedy. See Hill, *supra*.

It does not extend, *e.g.*, to a public employee's interest in continued employment or a temporary suspension in that employment. See Nicholas, 227 F.3d at 140 (citing to the "great majority of courts of appeals" holding that employment rights are not "fundamental" rights within the scope of substantive due process protection); Hill, 455 F.3d at 235. Our sister Court in the Middle District has recently observed the same case law in dismissing a police officer's claim of substantive due process violation premised on his alleged property interest in employment. See Cotner v. Yoxheimer, 2008 WL 2680872, *8 (M.D. Pa. July 2, 2008) (noting that in Hill the Third Circuit held that public employment is not a right entitled to substantive due process protection); cf. Grabiak v. Pennsylvania State Police, 276 Fed. Appx. 210 (3d Cir. 2008) (holding that probationary police officer's assertion of fundamental interest in continued employment was "foreclosed" by the Court's decision in Nicolas as to a tenured employee).[20]

Although Plaintiff asserts in his Brief in Opposition that his allegations of racial animus are intended to invoke a "substantive due process claim to continued employment", he provides no analysis or case law indicating that any such claim is maintainable under the facts alleged, nor is this Court aware of any.[21]

---

20. Even where a plaintiff properly premises his substantive due process claim on a fundamental interest, he must also show that the state action alleged "shocked the conscience". See Grabiak, *supra* (citing United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 399 (3d Cir. 2003)); Hall v. SEPTA, 167 Fed. Appx. 902, 906-07 (3d Cir. 2006) (finding no substantive due process violation where police officer was afforded both notice and opportunity to be heard prior to being required to reimburse defendant for cost of stolen radio, and concluding that conduct was not conscience-shocking); id. (comparing Rochin v. California, 342 U.S. 165, 172 (1952) (forcible pumping of suspect's stomach constituted conscience-shocking substantive due process violation)).

21. The cases cited by Plaintiff are inapposite. See, *e.g.*, Hall v. Pennsylvania State Police, 570 F.2d 86 (3d Cir. 1978) (regarding violation of equal protection clause - not substantive due

(continued...)

**E. State Law Claim for Intentional Infliction of Emotional Distress**

In response to Plaintiff's state law claim of intentional infliction of emotional distress, Defendants respond that (a) such claim is barred by the exclusivity provisions of the

---

21. (...continued)
process rights - based on alleged racially discriminatory conduct).

Pennsylvania Workers Compensation Act (the "PWCA"), see Brief in Support at 19, citing Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933 (3d Cir. 1997);[22] and (b) the Complaint fails to allege conduct meeting the "extreme and outrageous" threshold to this cause of action, see id. at 20, citing McGreevy v. Stroup, 413 F.3d 359, 371 (2005); Hoy v. Angelone, 720 A.2d 745 (Pa. 1998).

To state a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must adequately allege that the claim is not work-related and therefore barred by the exclusivity provisions of the PWCA.[23] He must further allege that the conduct was (1) extreme and outrageous,[24] (2) intentional or reckless, and (3) caused severe emotional distress. See Hargraves v. City of Philadelphia, 2007 WL 1276937 (E.D. Pa. April 26, 2007) (citing Dingle v. Centimark Corp., 2002 WL 1200944 (E.D. Pa. June 3, 2002) (dismissing IIED claim based on

---

22. In Matczak, the Third Circuit held that the PWCA "provides the sole remedy for injuries allegedly sustained during the course of employment." 136 F.3d at 940.

23. Although the Pennsylvania Courts have made clear that the PWCA provides exclusive remedy for all employee's work-related injuries, the statute recognizes - as Plaintiff notes - a limited "personal animus" exception. The exception applies to injuries caused by third-party intentional conduct for personal reasons not related to employment. The critical inquiry includes whether the personal attack was "sufficiently unrelated to the work situation so as not to arise out of the employment relationship." McInerney v. Moyer Lumber & Hardware, Inc., 244 F.Supp.2d 393, 400 (E.D. Pa. 2002); see generally Winterberg v. Transportation Ins. Co., 72 F.3d 318, 322 (3d Cir. 1995) (noting Pennsylvania statute's broad intent to preempt common law torts "in matters arguably connected with work-related injuries"). See also Fleming v. Kramont Employer Royce Realty, Inc., 2002 WL 1964257 (E.D. Pa. Aug. 16, 2002) (exception inapplicable where alleged discrimination included deprivation of information, exclusionary and differential treatment, and public criticism).

24. See Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (holding that "the conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized society"). See also Brieck v. Harbison-Walker Regractories, 624 F.Supp. 363, 366 (W.D. Pa. 1985 ) ("The extremeness of behavior associated with this tort necessarily means that it rarely will be found."); Clark v. Township of Falls, 890 F.2d 611, 632 (3d Cir. 1989) (same).

racial discrimination and retaliation).[25] Finally, Pennsylvania law requires "some type of physical harm due to the defendant's outrageous conduct" to satisfy the severe emotional distress element. See, *e.g.*, Reeves v. Middletown Ath. Ass'n, 866 A.2d 1115, 1122 (Pa. Super. 2004) (affirming dismissal of IIED claim); Fewell v. Besner, 664 A.2d 577, 582 (Pa. Super. 1995); Fulton v. United States, 198 Fed. Appx. 210, 215 (3d Cir. 2006).

Although a proper IIED claim is inherently fact-intensive, Plaintiff has not pled the essential elements of an IIED claim. See Huggins v. Coatesville Area School Dist., 2008 WL 4072801 (E.D. Pa. Aug. 27, 2007) (dismissing IIED claim for failure to plead elements as above).[26]

**F. § 1985(2)**

Defendants have not challenged Plaintiff's claims under 42 U.S.C. § 1985(2). The Court observes that, in general, there are two possible bases for a § 1985(2) claim. The first portion applies to conspiracies to deter (*e.g.* by intimidation) or to retaliate against a party or witness attending or offering testimony in federal court. The second portion applies to conspiracies intended to impede/obstruct "the due course of justice in any State . . ." with the intent to deny to any citizen the equal protection of the laws, or to injure/retaliate against someone for attempting

---

25. See also Farmer v. United Broth. of Carpenters & Joiners of Amer.,Local 25, 430 U.S. 290 (1977) (holding that discrimination itself could not form underlying "outrageous" conduct on which state court tort was based); Lassiter v. Children's Hosp. of Phila., 2008 WL 304891 (E.D. Pa. Jan. 31, 2008) (distinguishing case alleging racial animus and work-related conduct from personal animus exception); id. (citing Coney v. Pepsi Cola Bottling Co., 1997 WL 299434 (E.D. Pa. May 29, 1997) (noting that even "unquestionably reprehensible" racially discriminatory conduct was not actionable as "outrageous" in context of IIED).

26. Cf. McComb v. Morgan Stanley & Co., Inc., 2007 WL 4150786 (W.D. Pa. Nov. 19, 2007) (granting summary judgment on IIED claim where, even assuming claim was not barred by statute, evidence did not rise to required level).

to enforce rights of equal protection.  Brawer v. Horowitz, 535 F.2d 830 (3d Cir. 1976); Fetzer v. Cambria County Human Services, 384 F.Supp.2d 813,  (W.D. Pa. 2005).  The federal nexus in the first instance is a federal court proceeding (*e.g.*, Plaintiff's testimony in federal criminal proceedings, but not in Allegheny County proceedings); in the second instance, it is a "class-based, invidiously discriminatory animus." Id.  The Court further notes, in relation to granting Plaintiff twenty (20) days within which to file an Amended Complaint comporting with Rule 11, that allegations of conspiracy should be pled with specificity, *e.g.*, identification of dates and time periods, participants, objects, and actions.

## V.  ORDER

AND NOW, therefore, this 26th  day of November, 2008, it is hereby ORDERED, ADJUDGED and DECREED that Plaintiff is provided twenty (20) days from the date of this Order within which to amend his Complaint to set forth clearly-identified causes of action that both identify Plaintiff's legal theory and facts suggestive of the proscribed conduct alleged, in accordance with Bell Atlantic Corp. v. Twombly.  In the absence of amendment within the twenty (20) day period, Defendants' Partial Motion to Dismiss will be granted.  In the event of amendment, said Motion may be refiled, at Defendants' discretion, within twenty (20) days from the date of the Amended Complaint.

LISA PUPO LENIHAN
United States Magistrate Judge